UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

REGINA C. FLOYD,                    )
                                    )
        Plaintiff,                  )
                                    )        No. 1:05-CV-239
v.                                  )
                                    )        MAGISTRATE JUDGE LEE
                                    )
JO ANNE B. BARNHART,                )
Commissioner of Social Security,    )
                                    )
        Defendant.                  )

## MEMORANDUM AND ORDER

This action was instituted by the Plaintiff pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3)

seeking judicial review of the final decision of the Commissioner of Social Security

("Commissioner" or "Defendant") denying the Plaintiff a period of disability and disability

insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 ("the

Act").  Before the Court are: (1) Plaintiff's motion for summary judgment [Doc. No. 11] and (2)

Defendant's motion for summary judgment [Doc. No. 16].

        For the reasons stated herein, the decision of the Commissioner will be **AFFIRMED**, the

Defendant's motion for summary judgment [Doc. No. 16] will be **GRANTED**, the Plaintiff's motion

for summary judgment [Doc. No. 11] will be **DENIED**, and the case will be **DISMISSED**.

## Administrative Proceedings

        Plaintiff applied for DIB on September 10, 2003, alleging disability since September 23,

2002 (Tr. 13, 48-51).  Plaintiff's applications were denied initially, upon reconsideration, and after

a hearing and decision issued by the ALJ (Tr. 5-7, 10-18, 33-43, 337-50).  The ALJ's decision

became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request

for review on July 22, 2005 (Tr. 5-7). Plaintiff timely sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) [Doc. No. 1].

## Standard of Review

The Court must determine whether the ALJ failed to apply the correct legal standard and whether the ALJ's findings of fact were unsupported by substantial evidence. 42 U.S.C. § 405(g); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The Court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held substantial evidence is "such relevant

2

evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner*, 745 F.2d at 388 (citation omitted).

<u>**How Disability Benefits Are Determined**</u>

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that disability claims are evaluated by way of a five-step sequential analysis. 20 C.F.R. § 404.1520. The five-step analysis is sequential because if, at any step, the claimant is found to be not disabled or to be disabled, then the claim is reviewed no further. 20 C.F.R. § 404.1520(a). The following are the five steps in the analysis:

Step 1: Is claimant engaged in substantial gainful activity? If so, claimant is not disabled. 20 C.F.R. § 404.1520(b).

Step 2: Does claimant have a "severe" impairment or combination of impairments that significantly limits claimant's ability to do basic work activities, and will foreseeably result in death or last at least twelve months? If not, claimant is not disabled. 20 C.F.R. §§ 404.1509, 404.1520(c), 404.1521.

Step 3: Does the claimant's impairment meet or equal the criteria of an impairment described in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1? If so, the claimant is disabled, and the analysis may end without inquiry into the vocational factors. 20 C.F.R. § 404.1520(d). If inquiry is made into vocational factors, then after step three but before step four, the Commissioner evaluates a claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e)-(f); 404.1545.

3

Step 4:  Does claimant's RFC permit claimant to perform claimant's past relevant work?  If so, the claimant is not disabled.  20 C.F.R. § 404.1520(f).

Step 5:  Does the claimant retain the RFC to perform other work in the economy?  If so, the claimant is not disabled.  20 C.F.R. § 404.1520(g).

The burden of proof is upon the claimant at steps one through four to show disability.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).  Once the claimant has demonstrated the extent of claimant's RFC at step four, the burden shifts to the Commissioner to show that there is work in the national economy that may accommodate claimant's RFC.  *Id.*

## ALJ's Findings

The ALJ made the following findings in support of Commissioner's decision, which are conclusive if they are supported by substantial evidence in the record:

1.  The claimant meets the disability insured status requirements of the Act at least through the date of this decision.

2.  The claimant has not engaged in substantial gainful activity since September 10, 2003.

3.  The claimant has a "severe" impairment, as described in the decision, but does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4.  The claimant's subjective complaints are not fully credible.

5.  The claimant has the residual functional capacity to perform sedentary work activity with a sit/stand option, limited bending and twisting, and which allows use of a cane for ambulation.

6.  The claimant is unable to perform any past relevant work and has no transferable work skills.

7.  The claimant is 42 years old, which is defined as "a younger individual."

8.  The claimant has a high school education.

4

9. Based on an exertional capacity for sedentary work and the claimant's age, education, and work experience, 20 C.F.R. §§ 404.1569 and Rule 201.27, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

10. Although the claimant's additional limitations do not allow the claimant to perform the full range of sedentary work, using the above-cited rule as a framework for decisionmaking, there are a significant number of jobs in the national and regional economies which the claimant could perform. Examples and numbers of such jobs were identified by a vocational expert at the hearing.

11. The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

(Tr. 17-18).

## Issues Presented by Plaintiff

Plaintiff has raised the following issues for review:

(1) Whether the ALJ erred in determining Plaintiff's condition does not satisfy

the requirements of listing 1.04, the listing for disorders of the spine; and

(2) Whether the ALJ's finding Plaintiff was not under a disability from and after

September 23, 2002 is supported by substantial evidence.

[Doc. No. 12 at 3].

## Review of Evidence

### *Plaintiff's Age, Education, and Past Work Experience*

Plaintiff was born on June 16, 1962 (Tr. 48) and was 42 years of age on the date of the ALJ's

decision (Tr. 13, 18, 48). She reports a high school education (Tr. 60), and past relevant work as

an order filler, which the vocational expert described as medium exertion and unskilled work (Tr.

13).

5

*Medical Evidence Pertaining to Disability*

As summarized by the Commissioner, in September 2000 Plaintiff had a discectomy, a non-invasive procedure to relieve low back pain (Tr. 162, 179, 271, 342). She returned to her job as an order picker, where the heaviest weight she lifted was up to 50 pounds and frequently lifted 25 pounds (Tr. 55). In May 2001, Plaintiff was seen by HealthWorks when she began experiencing thoracic pain from lifting (Tr. 160). HealthWorks treatment notes for the period from May 24, 2001 through December 6, 2001 appear in the record (Tr. 145-62).

On or about May 7, 2002, Plaintiff reinjured her back while attempting to pick up a box weighing 70 pounds. She reported pain mostly down the right lower extremity with numbness and some burning pain in her low back (Tr. 271, 342-343). Plaintiff was initially treated at HealthWorks (Tr. 343). Treatment notes from HealthWorks for the period from May 15, 2002 to July 25, 2002 appear in the record (Tr. 114-42, 143-144). The treatment note for May 15, 2002 states Plaintiff experienced mid lower back pain 15 minutes after picking up a box on May 14, 2002 (Tr. 141).

On July 25, 2002, Plaintiff reported she felt a little better, but still had constant pain (Tr. 114). The diagnosis was back pain. Plaintiff was referred to an orthopaedic specialist and Vioxx and Soma were prescribed (Tr. 114). A return to work form, also dated July 25, 2002, limited Plaintiff to pushing, pulling or lifting no more than ten pounds, no prolonged standing or walking, no climbing, no bending, no squatting, no twisting, no overhead work, and referred Plaintiff to an orthopaedic specialist (Tr. 115).

She began seeing orthopaedic surgeon, S. Craig Humphreys, M.D. on or about August 29, 2002 (Tr. 271). Plaintiff has not returned to substantial gainful activity since September 2002. An MRI was taken of Plaintiff's lumbar spine on September 3, 2002 (Tr. 164). The impression was

Grade 1, 2mm spondylolisthesis of L5 on S1 with associated degenerative disc disease and endplate changes with no significant spinal stenosis or nerve root foraminal stenosis (Tr. 164).

Dr. Humphreys examined Plaintiff on October 22, 2002 (Tr. 269). His diagnosis was spondylolisthesis and he recommended surgery (*id.*). Prior to Plaintiff's surgery on December 2, 2002, Dr. Humphreys stated after pain medications, physical therapy, rest, and work restrictions Plaintiff had failed conservative treatment for her back pain and required surgical care (Tr. 179). Dr. Humphreys found positive straight leg raising at 80 degrees, severe pain the in the lower back, numbness from the left thigh to the toes, no clonus in either foot, decreased sensation to pinprick and light touch and no temperature, redness or edema (Tr. 180). Plaintiff underwent an L5-S1 laminectomy with facetectomy and geo interbody fusion cage, posterior iliac crest bone grant harvest, posterior instrumentation at L5-S1 and 360° anterior/posterior fusion performed by Dr. Humphreys (Tr. 181-95).

Dr. Humphreys examined Plaintiff on April 2, 2003 (Tr. 265). His diagnosis was "[s]tatus post lumbar fusion; doing fairly well" (*id.*). On physical examination, he found low back pain (*id.*). Plaintiff's ambulation was smooth and steady, she had good muscle tone and good range of motion in the lower extremities (*id.*). Dr. Humphreys limited Plaintiff to sedentary duty only and stated she should begin weaning from the post-operative brace (*id.*).

Dr. Humphreys examined Plaintiff on May 19, 2003 noting her neurological examination was normal and she rated her pain as five out of ten (Tr. 264). Dr. Humphreys' examination states low back pain and lower extremity numbness; and, he limited Plaintiff to no lifting over 25 pounds with limited bending and twisting (Tr. 264).

On June 11, 2003, a functional capacity evaluation ("FCE") of Plaintiff was performed by

7

Functional Assessment Systems of Hixson, Tennessee (Tr. 228-48). The FCE was performed by David Unger, LPTA and CFE, and reviewed by Rob Pearse, MS (Tr. 231). The FCE suggested Plaintiff gave a reliable effort throughout her testing (Tr. 228). The FCE found the following functional limitations: floor to knuckle lift, 30 pounds occasionally and 15 pounds frequently; carrying should be limited to 25 pounds occasionally and ten pounds frequently; and positional restrictions were recommended for occasional stooping (Tr. 231). The FCE also stated Plaintiff's functional capabilities fell into the low end of the medium category of physical demand characteristics for work, Plaintiff could not meet the strength demands of her job as a warehouse associate which required lifting up to 60 pounds, and she could not meet the positional requirements of her job (Tr. 231).

On November 5, 2003, Denise Bell, M.D. evaluated Plaintiff's ability to work at the request of the Tennessee Bureau of Disability Determination (Tr. 249-254). Dr. Bell concluded Plaintiff could lift 20 pounds occasionally, ten pounds frequently, stand and/or walk for a total of six hours in an eight hour workday and sit for a total of six hours in an eight hour workday (Tr. 250). Dr. Bell further concluded Plaintiff had postural limitations which limited her ability to climb, balance, stoop, kneel, crouch, and crawl (Tr. 251).

Plaintiff was examined by Dr. Humphreys on November 11, 2003 (Tr. 262-63). His diagnosis was status post lumbar fusion with some residual low back pain symptoms (Tr. 263). On physical examination, Dr. Humphreys found low back pain and right lower extremity pain and numbness (Tr. 262). Plaintiff ambulated independently and her gait was normal (*id.*).

On January 18, 2004, Dr. K. Shannon Tilley evaluated Plaintiff's ability to work at the request of the Tennessee Bureau of Disability Determination (Tr. 255-260). Dr. Tilley opined

Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, stand and/or walk for a total of six hours in an eight hour workday and sit for a total of six hours in an eight hour workday (Tr. 256). Dr. Tilley further concluded Plaintiff had postural limitations which limited her ability to balance, stoop, kneel, crouch, and crawl (Tr. 257).

Dr. Humphreys examined Plaintiff on March 30, 2004 (Tr. 261).  His diagnosis was (1) status post lumbar fusion, (2) residual pain, and (3) chronic weakness right lower extremity (*id.*). On physical examination, Dr. Humphreys found: (1) Plaintiff walked with a Trendelenberg type weakness gait of the right quad region, and (2) Plaintiff had weakness with extension of the right lower extremity and also with flexion (*id.*).  Plaintiff's deep tendon reflexes were normal and there were no gross neurosensory changes noted (*id.*).

Dr. Humphreys completed a "Social Security Disability Musculoskeletal System-Section 1.00B2" questionnaire on April 22, 2004 and placed checkmarks on the questionnaire indicating: (1) Plaintiff was unable to ambulate effectively without the use of ambulatory devices; (2) Plaintiff was incapable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out the activities of daily living; (3) Plaintiff's condition was expected to last for at least 12 consecutive months; and (4) there were no medical signs or laboratory findings that would indicate functional loss due to pain or other symptoms (Tr. 273).

Plaintiff was seen again by Dr. Humphreys on May 6, 2004 (Tr. 278).  On physical examination, Dr. Humphreys found low back pain, right lower extremity weakness and numbness in the outer three toes of the right foot (*id.*).  Dr. Humphreys' impression was status post lumbar fusion with low back pain and right lower extremity pain (*id.*).  X-rays revealed that fusion was occurring and the lumbar fusion hardware was in good position (*id.*).

Dr. Humphreys saw Plaintiff on October 21, 2004 (Tr. 279-80). He noted Plaintiff ambulated independently in the office, her gait was normal, her physical examination revealed low back pain and bilateral hip pain, she had difficulty with ambulation secondary to pain and weakness and used a cane, she had good muscle tone and she had a smooth and normal range of motion to hips, knees and ankles (Tr. 280). X-rays again revealed that fusion has occurred and the lumbar fusion hardware was in good position (*id.*). Dr. Humphreys' impression was "[s]tatus post lumbar fusion with some pain and ambulating with a cane in the office today." (*id.*).

### Material Submitted to the Appeals Council After the ALJ's Decision

An examination of Plaintiff was performed by Kurt Pulver, a physician's assistant with Dr. Humphreys' orthopaedic group, on February 4, 2005 (Tr. 296). Physician's assistant Kurt Pulver diagnosed "[s]tatus post lumbar fusion, doing well with questionable loosening of the sacral screws." (*id.*). Plaintiff reported pain in the lower lumbar area, and on physical examination she has tenderness over the posterolumbar region particularly over the left lower sacral area (*id.*). Her deep tendon reflexes were equal and no gross neurosensory changes were noted (*id.*). Physician's assistant Kurt Pulver administered an injection to the region over the left screw head to try to relieve Plaintiff's discomfort.

Dr. Humphreys also completed a "Social Security Disability Medical Evaluation-Disorders of the Spine Section 1.04" form on March 2, 2005 (Tr. 295). He indicated Plaintiff had a disorder of the spine resulting in compromise of a nerve root or the spinal cord (*id.*). He further indicated Plaintiff had evidence of nerve root compression, but she did not have spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication (*id.*).

Dr. Humphreys examined Plaintiff on March 8, 2005 (Tr. 293-94). His assessment was: (1)

pain over the iliac crest bone graft site, (2) status post lumbar fusion, and (3) low back pain (Tr. 293). Plaintiff reported her pain was a seven out of ten and her pain was intensified by everyday activities and was not diminished by any activity (*id.*). Dr. Humphreys' notes indicate that the trigger point injection given by physician's assistant Kurt Pulver was not effective. During this examination Dr. Humphreys administered a trigger point injection over the iliac crest on the left.

Plaintiff was seen by Dr. Humphreys on April 7, 2005. She reported her pain was seven to eight on a scale of one to ten and her pain was intensified by walking and was not eased by any activity (Tr. 289). A lumbar CT scan taken on March 28, 2005 (Tr. 291-92) was reviewed and revealed post surgical changes compatible with anterior and posterior spine fusion of the L5-S1 level (Tr. 289). The CT scan also revealed minimal disc bulges at L3-4 and L4-5 levels without evidence of significant spinal stenosis or nerve root foraminal stenosis (*id.*). Dr. Humphreys' diagnosis was: status post lumbar fusion and low back pain (Tr. 290). He stated the lumbar hardware needed to be removed and the left iliac crest needed to be revised secondary to Plaintiff's pain level (*id.*).

### Plaintiff's Testimony

Plaintiff worked as a warehouse associate at an automobile parts distribution center for 15 years, until September 23, 2002 (Tr. 341). Plaintiff would receive an order for parts, would then pick out the different parts, box the parts, and get them ready to ship (*id.*).

Plaintiff sustained an injury to her back at work in 1992, was off work for a few weeks due to the injury and then returned (Tr. 341). Plaintiff again injured her back at work in 2000 (Tr. 342). At that time, a discectomy was performed at L5-S1 (Tr. 342). Plaintiff was off work for some time due to this injury, but did return to work (*id.*).

In May 2002, Plaintiff picked up a 70 pound box and reinjured her back (*id.*). She initially

was treated at HealthWorks and then began treating with Dr. Humphreys (Tr. 343).  Plaintiff continued to work until September 2003, but quit when the pain became unbearable (*id.*).

During the December 14, 2004 hearing, the ALJ noticed Plaintiff's hands were shaking (Tr. 344).  She stated this was due to the serious pain she was experiencing as she sat at the hearing (*id.*).  Since the surgery, Plaintiff estimated her pain was a seven out of ten on a daily basis (Tr. 345).  Her right leg was numb from the waist down on the outside, she had no feeling on the outer part of her foot, and every time she stepped on the heel of her foot, it felt like she was stepping on needles (*id.*).  Plaintiff also stated she was able to tolerate the pain due to her high pain tolerance (*id.*).  Plaintiff stated she experienced constant pain, and none of the medications she had tried helped to ease her pain (Tr. 347).

Plaintiff is able to fix coffee in the morning and do a few dishes, put laundry in the washer and watch TV for about 20 minutes (Tr. 345).  Plaintiff's husband fixed a stool in a way to enable Plaintiff to be able to start laundry (Tr. 345).  Plaintiff stated she could sit for about 20 minutes; could pick up about five pounds without experiencing pain; and she could stand for about fifteen minutes, although she needed to hold on to something due to the weakness in her right leg (Tr. 346).  Plaintiff used a cane to ambulate, especially if she had a long distance to walk (*id.*).

***Vocational Expert's Testimony***

Jane Colvin-Roberson testified as a vocational expert ("VE") at the hearing (Tr. 347).  In response to a hypothetical involving a 42 year-old woman with a high school education, with the RFC for sedentary work that allowed her to change positions as needed and who required a cane to walk with a limp, the VE identified positions which could be performed by the hypothetical individual (Tr. 347-48).  These positions were: (1) ticket-taker, with 100 positions in the region and

101,680 nationally; (2) parking lot attendant, with 380 positions regionally and 63,067 nationally; and (3) cashier positions, with 611 regionally and 169,000 nationally (Tr. 348).

The VE stated that if Plaintiff's testimony were found to be fully credible, she would not be able to perform sedentary work (Tr. 349). Specifically, the VE stated limiting sitting to 20 minutes, standing to 15 minutes and lifting to five pounds would eliminate Plaintiff from a full range of sedentary work (Tr. 349). The VE also stated if Plaintiff's testimony were found fully credible, her need to change positions and the amount of pain she described would probably create an issue as to whether Plaintiff could sustain and maintain employment (*id.*).

<u>**Analysis**</u>

**A.       Whether the ALJ Erred at Step Three of the Sequential Analysis**

Plaintiff asserts substantial evidence does not support the ALJ's finding at step three of the sequential evaluation that her impairments, considered singly or in combination, do not meet or equal Listing 1.04 [Doc. No. 12 at 7-14]. Plaintiff bases her argument on Dr. Humphreys' treatment notes and the form he completed on March 2, 2005 concerning Listing 1.04 (Tr. 295). Dr. Humphreys did not complete this form until after the ALJ issued his decision on December 22, 2004 (Tr. 18).

Plaintiff has the burden to show that "her impairment meets or equals a listed impairment." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). For a plaintiff to show that her impairment matches a listing, it must meet *all* of the specified medical criteria. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

13

**(1)      The evidence submitted to the Appeals Council**

The evidence submitted by Plaintiff to the Appeals Council after the ALJ's decision cannot be considered for purposes of determining whether substantial evidence supports the ALJ's decision and it cannot be considered for purposes of determining whether a remand is warranted under sentence four of 42 U.S.C. § 405(g).  "[E]vidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster*, 279 F.3d at 357.

After Plaintiff submitted additional evidence to the Appeals Council, the Appeals Council declined to review the case.  In its decision denying Plaintiff's request for review, the Appeals Council stated:

> We found no reason under our rules to review the Administrative Law Judge's decision.  Therefore, we have denied your request for review.
> . . .
> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.
>
> We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

(Tr. 5-6).  Where the Appeals Council considers additional evidence but declines review of a DIB application on the merits, the district court cannot consider the evidence in deciding whether the ALJ's decision should be upheld, modified, or reversed.  The district court can only consider such evidence in connection with a remand under sentence six of 42 U.S.C. § 405(g).  *Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993)).

Apparently relying, at least in part, on Dr. Humphreys' additional questionnaire, Plaintiff

14

contends the ALJ's step three determination disregards the treating physician's opinion [Doc. No. 12 at 10-11]. Although a treating physician's opinion typically is entitled to substantial deference, as argued by Plaintiff, the ALJ is not bound by that opinion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). The Sixth Circuit has consistently stated that the treating physician's opinion is entitled to deference only if it is based on objective medical findings, *see, e.g.*, *Warner*, 375 F.3d at 390; *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993), *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985), and not contradicted by substantial evidence to the contrary. *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987). If the ALJ finds the treating physician's opinion is not supported by objective evidence, the ALJ is entitled to discredit the opinion as long as he sets forth good reasons for doing so. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir. 2004); *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Sixth Circuit also has held that the opinion of a treating physician generally is entitled to greater weight than the contrary opinion of a consulting physician who has examined the claimant on only a single occasion. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997); *Hardaway*, 823 F.2d at 927. The responsibility for weighing the record evidence, including conflicting physicians' opinions, and resolving the conflicts rests with the ALJ. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). The ALJ may reject unsupported opinions or opinions inconsistent with other substantial evidence in the record. *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). *See also* 20 C.F.R. §§ 404.1527(d) and 416.927(d). Here, the ALJ appropriately considered Dr. Humphreys' opinions that were in the record at the time of the decision, giving his reasons for doing so (Tr. 16).

### (2) Listing 1.04

The evidence before the ALJ supports the decision that Plaintiff did not meet or equal

any listing, which includes Listing 1.04. Listing 1.04 requires:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

Plaintiff does not appear to contend that she satisfies Listing 1.04B or 1.04C, as there is no

evidence she has either spinal arachnoiditis or lumbar stenosis with pseudoclaudication. As argued

by the Commissioner with respect to Listing 1.04A, when Dr. Humphreys saw Plaintiff on October

21, 2004 she ambulated independently and her gait was normal (Tr. 280). Dr. Humphreys'

impression was status post lumbar fusion with some pain and ambulating with a cane (*id.*). X-rays

revealed that fusion had occurred and the fusion hardware was in good position. On March 30,

2004, Dr. Humphreys diagnosed, *inter alia*, chronic weakness in Plaintiff's right lower extremity

and also with flexion (Tr. 261). However, Plaintiff's deep tendon reflexes were normal and there were no gross neurosensory changes (*id.*). In the questionnaire completed April 22, 2004, Dr. Humphreys indicated Plaintiff was unable to ambulate effectively without the use of an ambulatory device and she was incapable of sustaining a reasonable walking pace over a sufficient distance to carry out activities of daily living (Tr. 273). However, Dr. Humphreys also indicated there were no medical signs or laboratory findings that would indicate functional loss due to pain or other symptoms (*id.*). Dr. Humphreys' findings and statements set forth above are substantial evidence in support of the ALJ's decision that Plaintiff did not meet or equal the requirements of any of the listings.

While not specifically argued by the parties, the Court notes the ALJ's failure to explicitly mention Listing 1.04 in his decision does not warrant a remand of this matter. As noted above, the ALJ found Plaintiff did not have an impairment which met or equaled any of the impairments in the listings (Tr. 17, finding no. 3). Federal courts generally agree an ALJ should provide a sufficient explanation for his or her step three conclusion when making a disability determination. *See, e.g., Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). In *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411 (6th Cir. Jan. 31, 2006), Bledsoe challenged the adequacy of the ALJ's step three finding. The ALJ had found "the medical evidence establishes that the claimant has 'severe' impairments . . . , but that she does not have an impairment or *combination of impairments* listed in, or medically equal to the one listed in Appendix 1, Subpart P, Regulations No. 4." *Id.* (emphasis in original). The Sixth Circuit rejected Bledsoe's challenge to the sufficiency of the ALJ's finding, holding the ALJ did not err by not spelling out every consideration that went into the ALJ's step

17

three analysis. *Id.* Rather, the Sixth Circuit stated:

> The language of 20 C.F.R. § 404.1526 does not state that the ALJ must articulate, at length, the analysis of the medical equivalency issue. It states that the ALJ should review all evidence of impairments to see if the sum of impairments is medically equivalent to a "listed impairment." This is exactly what the ALJ did. The ALJ described evidence pertaining to all impairments, both severe and non-severe, for five pages earlier in his opinion and made factual findings. The ALJ explicitly stated that he considered the combination of all impairments even though he did not spell out every fact a second time under the step three analysis.

*Id.* Thus, the Sixth Circuit held there is no heightened articulation standard applied to the step three analysis where substantial evidence supports the ALJ's findings. *Id.* (citing *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986)). *See also Letner v. Barnhart*, No. 1:04-cv-127 (E.D. Tenn. Sept. 30. 2005) (holding it "logical that even when an ALJ has not referred specifically to the listing or an ALJ has made a conclusory step three decision, if a thorough and fair review is still possible, then remand is not necessary."). Therefore, a remand for a better articulation of the ALJ's step three analysis is unnecessary.

### B. Whether the ALJ's Decision Is Supported by Substantial Evidence

Plaintiff argues the ALJ's finding she was not under a disability from and after September 23, 2002 is not supported by substantial evidence [Doc. No. 12 at 14-15]. She asserts the ALJ's finding that her subjective complaints of pain were not fully credible is flawed (*id.*).

### (1) Subjective Complaints

Regarding subjective complaints of pain, a claimant's self-reported claims of disabling pain are not, standing alone, sufficient to establish disability. *See* 20 C.F.R. §§ 404.1529(a) and 416.929(a). First, such claims must be supported by objective medical evidence (*i.e.*, medical signs and/or laboratory findings) of an underlying medical condition and, second, either (1) the objective

18

medical evidence must confirm the severity of the alleged pain, or (2) the objectively established medical condition must be of such a severity that it can be reasonably expected to produce the alleged disabling pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); 20 C.F.R. §§ 404.1529(a) and 416.929(a). Finally, the intensity and persistence of the claimant's symptoms must be evaluated to determine whether those symptoms limit the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c)(1) and 416.929(c)(1).

Relevant evidence for the ALJ's determination includes the claimant's medical history, statements by treating physicians, medications taken, medical treatment other than medication received to relieve pain or other symptoms, methods the claimant has used to relieve pain, precipitating and aggravating factors, daily activities, and statements by the claimant. 20 C.F.R. §§ 404.1529(c) and 416.929(c). Ultimately, it is the functional limitations imposed by a condition rather than the diagnosis itself which determines whether an individual is disabled. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

Pain caused by an impairment can be disabling, but each individual has a different tolerance of pain. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984). Thus, a determination of disability based on pain depends in part on the credibility of the claimant. *Id.*; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981). In determining credibility, the ALJ considers, among other things, whether there are any inconsistencies between the claimant's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Because the ALJ is charged with the responsibility of observing the demeanor and credibility of the witness, his conclusions should be highly regarded. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).

19

The record reflects the ALJ considered a variety of relevant factors in assessing the overall nature and severity of the limitations caused by Plaintiff's impairments, symptoms, and complaints of pain in accordance with the evaluation factors as set forth in SSR 96-7p (Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements) and 20 C.F.R. §§ 404.1529 and 416.929. The ALJ discussed the reasons for his findings with respect to Plaintiff's subjective claims of pain (Tr. 15-16). The ALJ concluded the objective medical evidence, the Plaintiff's activities, and the Plaintiff's negative response to certain suggestions made by Dr. Humphreys did not demonstrate the degree of severity sufficient to produce the limitations Plaintiff alleged. He appropriately considered her subjective complaints, course of medical treatment, and failure to participate in recommended treatment.

"As a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain." *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). In his decision the ALJ stated:

> The claimant's activities include cooking, "picking up," shopping for groceries every couple of weeks, maintaining her own personal care, watching television, talking with family and friends on the telephone once or twice a week, occasionally visiting her mother, working in a puzzle book, reading books, doing laundry, and driving some. Though somewhat limited in scope, such activities are also inconsistent with a total inability to perform work activity.

(Tr. 16). Here, the ALJ also reasonably considered Plaintiff's activities as support for his credibility finding.

A physician's opinion may support an ALJ's credibility finding. 20 C.F.R. § 404.1529(c)(3). Plaintiff's treating physician, Dr. Humphreys, opined that she should not lift over five pounds with limited bending and twisting, that she could not walk without a cane, and that her ability to ambulate

was limited (Tr. 264, 273). The ALJ partially adopted this limitation, but increased the occasional lifting limitation to ten pounds based upon Plaintiff's demonstrated ability in the FCE to lift 30 pounds occasionally and 15 pounds frequently (Tr. 16, 231). *See Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (use of functional capacity evaluation to determine RFC upheld). Thus, the ALJ appropriately considered the opinions of Dr. Humphreys (available at the time of the ALJ's decision) when determining Plaintiff's credibility and limitations.

The Court concludes the ALJ's articulated specific reasons for his findings and substantial evidence supports his credibility determination with respect to Plaintiff's subjective complaints. As a result, the ALJ's assessment of Plaintiff's credibility warrants deference. Substantial evidence supports the ALJ's finding Plaintiff was severely limited due to pain, but that she retained the ability to perform sedentary work with a sit-stand option, with limited bending and twisting, and which accommodated the use of a cane to ambulate.

### (2) Failure to use the Grids

Plaintiff cites 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h)(3), of the Medical-Vocational Guidelines ("Grids"), as support for her argument the ALJ's RFC determination is not supported by substantial evidence. The relevant portions of § 201.00(h) state:

> (3) Nevertheless, a decision of "disabled" may be appropriate for some individuals under age 45 (or individuals age 45-49 for whom rule 201.17 does not direct a decision of disabled) who do not have the ability to perform a full range of sedentary work. However, the inability to perform a full range of sedentary work does not necessarily equate with a finding of "disabled." Whether an individual will be able to make an adjustment to other work requires an adjudicative assessment of factors such as the type and extent of the individual's limitations or restrictions and the extent of the erosion of the occupational base. It requires an individualized determination that considers the impact of the limitations or restrictions on the number of sedentary, unskilled occupations or the

21

total number of jobs to which the individual may be able to adjust, considering his or her age, education and work experience, including any transferable skills or education providing for direct entry into skilled work.

(4) "Sedentary work" represents a significantly restricted range of work, and individuals with a maximum sustained work capability limited to sedentary work have very serious functional limitations. Therefore, as with any case, a finding that an individual is limited to less than the full range of sedentary work will be based on careful consideration of the evidence of the individual's medical impairment(s) and the limitations and restrictions attributable to it. Such evidence must support the finding that the individual's residual functional capacity is limited to less than the full range of sedentary work.

20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h)(3) & (4).

These regulations do not state a plaintiff is "disabled" if she is unable to perform a full range of sedentary work, they require the ALJ to make an "individualized determination" rather than applying the Grids, when a claimant is limited to less than the full range of sedentary work. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 246-47 (6th Cir. 1987) (because Maziarz was found capable of performing only a limited range of sedentary work, the Commissioner could not rely on the grids, and the ALJ obtained the testimony of the VE to identify jobs in the national economy which Maziarz could perform; and, the VE's testimony was substantial evidence sufficient to support the Commissioner's burden at step five of the sequential evaluation to show that Maziarz retained the residual functional capacity to perform other jobs in the economy). *See also Nix v. Sullivan*, No. 90-2988, 1991 WL 118534, * 2-4 (7th Cir. Jul. 2, 1991) (although Nix could not perform full range of sedentary work, the VE's identification of 675 jobs within four occupations was inconsistent with a finding that Nix was unable to engage in any other kind of work). Plaintiff is limited to less than the full range of sedentary work and the ALJ properly made an "individualized

determination" rather than applying the Grids.

The ALJ asked the VE to consider Plaintiff's individualized limitations for sedentary work with a sit-stand option, with limited bending and twisting, which accommodated the use of a cane to ambulate (Tr. 347). The VE identified three positions representing 1,091 jobs in the region as exemplary of the type of jobs that such a claimant could perform (Tr. 348). "A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001). The VE identified a significant number of jobs. *Hall v. Bowen*, 837 F.2d 272, 275-76 (6th Cir. 1988) (1,350 jobs represents a significant number of jobs in Dayton area and national economy). A claimant who can perform a significant number of jobs is not disabled. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(a)(4)(v). Accordingly, the ALJ's decision is supported by substantial evidence.

## C. Remand Under Sentence Six of 42 U.S.C. § 405(g)

Plaintiff relies upon Dr. Humphreys' questionnaire of March 2, 2005 (Tr. 295) to support her argument for reversal of the ALJ's decision [Doc. No. 12 at 9-13]. Plaintiff does not, however, argue the questionnaire is a basis for a remand under sentence six of 42 U.S.C. § 405(g).

A district court may remand a case to the ALJ to consider additional evidence "only upon a showing that there is (1) new evidence which is (2) material and that (3) there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C.§ 405(g); *accord Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Good cause is shown when the claimant gives a valid reason for failing to obtain relevant evidence prior to the hearing. *See Cotton*, 2 F.3d

at 696. Additional evidence is material only if the claimant can demonstrate there is a "reasonable probability" that the ALJ would have reached a different conclusion on the issues of disability if he had been presented with the additional evidence. *See Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). Additional evidence is new if it was not in existence or available to the claimant at the time of the administrative proceedings. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S. Ct. 2658, 2664, 110 L. Ed. 2d 563 (1990). The party seeking remand has the burden to show that remand is appropriate. *See Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *Foster*, 279 F.3d at 357.

Although the questionnaire evidence is new because it did not exist when the ALJ issued his decision, Plaintiff has not shown the additional evidence is material, and does not argue good cause exists for submitting the questionnaire after the ALJ's decision. In short, Plaintiff has not carried her burden of demonstrating that the additional evidence should be considered or that remand is warranted. *Oliver*, 804 F.2d at 966 ("It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405."). Therefore, Plaintiff has waived any request for a sentence six remand. *See Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Young v. Secretary of Health and Human Services*, 925 F.2d 146, 149 (6th Cir. 1990); *Hipps v. Comm'r of Soc. Sec.*, No. 02-6380, 2003 WL 22000289, * 2-3 (6th Cir. Aug. 20, 2003).

## Conclusion

Having carefully reviewed the administrative record and the briefs of the parties filed in support of their respective motions, for the reasons stated above:

(1)     Defendant's motion for summary judgment [Doc. No. 16] will be **GRANTED**;

(2)     Plaintiff's motion for summary judgment [Doc. No. 11] will be **DENIED**;

24

(3)    A Judgment will be entered pursuant to Rule 58 of the Federal Rules of Civil

Procedure **AFFIRMING** the Commissioner's decision which denied benefits

to the Plaintiff; and,

(4)    This action will be **DISMISSED**.

SO ORDERED.

ENTER:


s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE